*Debe declararse sin lugar la petición y anularse el auto expedido.*

REXACH RACING & SPORTING CORPORATION, peticionaria y apelada, *v.* COMISIÓN HÍPICA INSULAR, demandada y apelante, y LAS MONJAS RACING CORPORATION, interventora.

Núm. 8272.—*Sometido:* Febrero 20, 1942. *Resuelto:* Abril 30, 1942.

*Diego O. Marrero,* abogado de la apelante; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada; *Leopoldo Felíu,* abogado de la interventora.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El 23 de mayo de 1939, la demandante, Rexach Racing & Sporting Corporation, una corporación de esta isla que explota un hipódromo de su propiedad dentro del municipio de San Juan, pidió a la corte de distrito que expidiera un auto definitivo de *injunction* prohibiendo a la demandada, Comisión Hípica Insular, poner en vigor su orden de mayo 15,

1939, cancelando las fechas seleccionadas por la demandante para celebrar *subscription funds* e interferir con la preparación y distribución de boletos para y celebración del subscription fund ya anunciado para junio 4, 1939.

Solicitó además la demandante que mientras el pleito se sustanciaba y decidía, se expidiera un auto preliminar mediante fianza, que fué en efecto expedido. Pidió la demandada su anulación y contestó. Intervino Las Monjas Racing Corporation, otra corporación que explota otro hipódromo en San Juan conocido por "Las Monjas" y el caso quedó finalmente sometido a la decisión de la corte en mayo 29, 1939.

La sentencia se dictó el 6 de junio siguiente. Por ella se declaró con lugar la demanda y en su consecuencia se ordenó la expedición del injunction perpetuo solicitado, con las costas a la demandada, sin incluir honorarios de abogado.

No conforme la demandada, apeló, celebrándose la vista del recurso el 20 de febrero último.

 ¿Tiene la Comisión Hípica Insular facultad para asignar fechas a los diferentes hipódromos que funcionan en San Juan para la celebración de subscription funds? Esa es la cuestión última a resolver. La corte de distrito la decidió en la negativa al dar la razón a la demandante en el caso concreto que llevó ante ella. Y la demandada sostiene que esa decisión es errónea.

Entresacando de las largas y confusas alegaciones de las partes, el caso concreto a que acabamos de referirnos, es así:

Para el año 1939 la Comisión Hípica Insular autorizó la celebración de carreras en tres hipódromos, a saber: "Las Casas," "Las Monjas" y "Quintana," y como en el último no se estuvieran celebrando, autorizó subscription funds en los dos otros en las siguientes fechas, mayo 7 y 21, junio 4 y 18, y julio 2, 16 y 30 en "Las Casas," y mayo 17 y 31, junio 14 y julio 4 en "Las Monjas."

Así las cosas, el "Quintana," según la comisión, que había comenzado a celebrar carreras en mayo 7, solicitó que se

le señalaran fechas para el subscription fund y la comisión procedió a hacerlo en mayo 15, 1939, por medio de la siguiente resolución:

"Habiendo la Comisión Hípica fijado en 23 de marzo de 1939, fechas para la celebración de varios sorteos del subscription fund, cuando no estaba funcionando el hipódromo 'Quintana Racing Park', y teniendo en cuenta que durante las dos últimas semanas Las Monjas Racing Corporation no ha celebrado carreras en su hipódromo y habérsele asignado varias fechas para la celebración de subscription funds, la comisión resuelve cancelar, como cancela, todas las fechas señaladas para celebrar sorteos, con exclusión del 4 de junio de 1939, en que se permitirá un sorteo en el hipódromo Quintana Racing Park por haber sometido esta corporación el modelo de boletos que se han de usar y además deniega por la presente la solicitud de Rexach Racing and Sporting Corporation para celebrar el mismo día 4 de junio de 1939 otro subscription fund, por no haberse sometido aún el modelo de boletos que se han de usar tal como lo dispone las reglas vigentes y por no permitir tales reglas la celebración de dos subscription funds en un mismo día."

Y habiéndose negado la comisión a dejar su orden sin efecto, la demandante acudió a la corte de distrito.

La ley que regula el caso es la número 17 de 1935, pág. 93, por virtud de la cual se enmendó la Ley Hípica de Puerto Rico. El artículo 5 de la ley, como quedó enmendado, en lo pertinente, prescribe:

"Artículo 5.—La Comisión Hípica Insular queda facultada para reglamentar todo lo concerniente al deporte hípico y a tal objeto tendrá facultad para prescribir las reglas y condiciones por las cuales deberá regirse la celebración de carreras de caballos en Puerto Rico; para reglamentar todo aquello que se relacione con la forma en que deberán hacerse las apuestas en las bancas alemanas, 'pools,' 'subscription funds,' 'mutuels,' o cualquier otro sistema de apuestas; para prescribir, por reglamento, los requisitos que deberán llenar las personas que se dediquen a cualquier actividad que se relacione con las carreras de caballos y las que desearen obtener y obtengan de la Comisión licencias para explotar hipódromos, y licencias de dueño de caballos, 'jockey,' y 'trainer' o cuadrero; Disponiéndose, que la Comisión Hípica Insular podrá, cuando lo estimare conveniente, en

beneficio del deporte, denegar la solicitud de cualquiera de estas licencias; Disponiéndose, además, que en los casos de renovación de las licencias de los hipódromos actualmente en explotación, la Comisión Hípica Insular deberá renovar las mismas a solicitud de las personas naturales o jurídicas explotadoras de los mismos, siempre que dichas personas naturales o jurídicas y sus respectivos hipódromos reúnan las condiciones que por Reglamento exigiere la Comisión Hípica Insular.''

El 21, también como quedó enmendado, pág. 101, es así:

''Artículo 21.—El sistema de apuestas conocido en Puerto Rico por 'pool' y las apuestas en las bancas alemanas, 'subscription funds,' 'mutuels,' así como cualquier otro sistema de apuestas, sólo podrán establecerse para los días en que se celebren carreras de caballos y en relación con dichas carreras, dentro de los hipódromos autorizados por la Comisión Hípica Insular, y únicamente podrán ser explotados por las personas naturales o jurídicas explotadoras de los hipódromos en funcionamiento.''

Y el 23½ adicionado por la dicha ley, pág. 109, ordena:

''Artículo 23½.—Para garantizar debidamente el dinero que se juegue en el 'pool,' 'subscription funds,' bancas alemanas, 'mutuel' y cualquier otro sistema de apuestas, la Comisión Hípica Insular deberá exigir la prestación de las fianzas necesarias por aquellas personas responsables del manejo y funcionamiento de los fondos de tales sistemas de apuestas en los hipódromos en explotación, pudiendo, a este fin, determinar la cuantía, clase y duración de tales fianzas.''

La corte sentenciadora razonó su conclusión como sigue:

''La Comisión Hípica, de acuerdo con el mismo artículo (5), puede prescribir las reglas y condiciones por las cuales deberá regirse la celebración de las carreras de caballos en Puerto Rico, pero si interpretamos el artículo 5 en relación con los artículos 21 y 23½, supra, tenemos que llegar a la conclusión que la cuestión de las apuestas está subordinada a que se celebren carreras, es decir, cada vez que haya carreras pueden haber apuestas en los distintos sistemas enumerados incluyendo el subscription fund y pueden ser explotados por las personas naturales o jurídicas explotadoras de los hipódromos, debiendo la Comisión Hípica reglamentar la forma en que se lleven a efecto y exigir la prestación de las fianzas necesarias para garan-

tizar debidamente el dinero jugado. Si la Comisión Hípica tuviera el poder, bajo el artículo 5, de determinar las fechas en que se puede jugar el sistema de apuestas conocido por subscription fund, también podría determinar en qué fechas se puede jugar el pool o las bancas alemanas en determinado hipódromo, aun cuando se celebren carreras en el mismo. ¿Cómo se harían entonces los descuentos que provee el artículo 29 de la Ley y cómo podrían subsistir no ya los hipódromos, sino la propia Comisión Hípica? . . .

"Ya en el caso de *Porto Rico Racing Corporation* v. *Comisión Hípica,* 38 D.P.R. 280, nuestra Corte Suprema al hacer un historial de la legislación hípica de Puerto Rico y al interpretar el artículo 5 de la Ley de 1927 (Núm. 40 de 1927, pág. 207) sobre la facultad conferida a la Comisión Hípica de reglamentar la celebración de carreras, resolvió que no incluía la facultad de fijar turnos o las fechas en que las carreras se celebren, según se autorizaba por la ley anterior de 1925 (Ley núm. 21 de 1925, pág. 147). Si la Legislatura hubiera tenido la intención de concederle a la Comisión Hípica la facultad de limitar los días en que se podían establecer sistemas de apuestas en los hipódromos, y entre ellos, el subscription fund, lo hubiera dicho expresamente y no utilizando la frase 'para reglamentar todo aquello que se relacione con la forma en que deberán hacerse las apuestas, etc.' Reglamentar 'la forma' de hacer una cosa no incluye determinar cuándo se ha de hacer, especialmente cuando la explotación de las apuestas se pone en manos de los hipódromos autorizados para celebrar carreras."

La argumentación que contiene el extenso alegato de la apelante no nos convence de que el criterio sustentado por el tribunal sentenciador sea erróneo.

No hay duda de que la comisión fué establecida para la reglamentación del llamado deporte hípico en esta isla, pero sus facultades aunque amplísimas emanan de la ley y la letra de ésta no debe ser menospreciada bajo el pretexto de cumplir su espíritu.

Su facultad de reglamentar los juegos se extiende, según los términos expresos de la ley, a "todo aquello que se relacione con la forma" y para comprender dentro de la forma la fijación de fechas sería necesario forzar el claro significado de la letra de la ley.

Creemos en verdad que la intervención de la Comisión Hípica en la fijación de determinados días para el subscription fund en los varios hipódromos, podría ser beneficiosa para los intereses públicos y para asegurar un reparto equitativo del negocio entre todas las empresas que se dedican al mismo, pero tal como está redactada la ley, sólo puede hacerlo con el consentimiento de dichas empresas, en forma persuasiva y no mandatoria.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Todd, Jr., no intervino.